IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Derek Speiker, et al., | Case No. 3:09 CV 798 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Toledo Public Schools, | |
| Defendant. | |

## INTRODUCTION

This is a diversity case governed by Ohio law. Plaintiffs Derek Speiker and Leray Cantrill bring negligence claims against Defendant Toledo Public Schools (TPS). Defendant filed a Motion for Summary Judgment (Doc. No. 33). Plaintiffs Derek Speiker and Leray Cantrill filed an Opposition (Doc. No. 34), and Defendant Replied (Doc. No. 35). Because Plaintiffs' claims are barred by immunity under Chapter 2744 of the Ohio Revised Code, Defendant's Motion is granted.

## BACKGROUND

Plaintiffs are scrappers who pick up and take unwanted metal to a scrap yard where they are paid based on the amount and type of metal they bring (Speiker Dep. pp. 10-11, 20).

On May 17, 2008 (Compl. ¶ 4), Plaintiffs arrived at TPS's DeVilbiss building boiler house to remove metal shelving (Zanger Dep. pp. 7-8). To remove the shelving, Speiker cut it with a torch into pieces small enough to be carried out by Cantrill (Doc. No. 34-3, Cantrill Dep. p. 37; Speiker Dep. p. 66). Neither Plaintiff wore protective mouth gear while the torch was in use (Cantrill Dep. p. 18).

Operation of the torch generated smoke (Cantrill Dep. p. 37), prompting Cantrill, at Speiker's request, to ask William Zanger, the building operator at the time (Zanger Dep. p. 5), for a fan to aid ventilation (Speiker Dep. p. 47).

Proper ventilation is required, when using a torch, to prevent inhalation of carbon monoxide that is generated by the torch when it is in use as carbon monoxide inhalation could cause serious health problems (Speiker Dep. pp. 30-31). Speiker noticed an odor arising during the torching, but the odor was similar to that which normally accompanies torching metal (Speiker Dep. pp. 54-55). While cutting, Speiker began to cough, similar to the type of cough he normally experienced while operating a torch (Speiker Dep. pp. 66-67). Once the shelves were removed, both Speiker and Cantrill began coughing more violently and felt short of breath (Speiker Dep. p. 67; Cantrill Dep. pp. 41-42). Cantrill was admitted to St. Vincent's Hospital later that night and remained there for eight days (Cantrill Dep. p. 43). Speiker waited two or three days to go to the hospital and was diagnosed with chemical pneumonitis (Speiker Dep. pp. 76, 85).

Prior to lighting the torch, Speiker had noticed the shelving was damp and asked Cantrill about it. Cantrill told Speiker that the shelves had been cleaned. Without further inquiry, Speiker assumed the dampness was water (Speiker Dep. p. 43). The substance on the shelving was never identified, and there is no evidence as to whether it was toxic (Speiker Dep. pp. 45, 61). At no time did anyone from TPS direct Plaintiffs on how to remove the shelving (Cantrill Dep. p. 37; Speiker Dep. p. 47).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences from

2

the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

Plaintiffs allege Defendant was negligent for failing to remove or inform Plaintiffs about a dangerous condition on the premises, and that this dangerous condition caused Plaintiffs' injury (Compl. ¶ 10). Defendant moves for summary judgment on grounds of immunity and failure to meet the elements of negligence.

**Immunity**

The Political Subdivision Tort Liability Act "sets forth the defenses and immunities available to political subdivisions in civil actions for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function" and "provides exceptions to immunity in specified circumstances." *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St. 3d 455 (2009) (citing Ohio Revised Code § 2744.02). Under the general rule, political subdivisions are not liable for damages. Revised Code § 2744.02(A)(1). Defendant, as a "school district," qualifies as a political subdivision. Revised Code § 2744.01(F).

The question is whether one of the statutory exceptions to immunity applies. The exception relevant to this case is Section 2744.02(B)(4), which provides that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and

3

that occurs within or on the grounds of, *and is due to physical defects within or on the grounds of,* buildings that are used in connection with the performance of a governmental function . . ." (emphasis added).  Accordingly, if Plaintiffs' injuries were a result of negligence caused by a physical defect on the school's grounds, then the exception would apply and Defendant would not enjoy immunity.

Plaintiffs rely on *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St. 3d 451, 455 (2002) for their broad reading of the Section (B)(4) exception. *Hubbard* states "[Section (B)(4)] is not confined to injury resulting from physical defects or negligent use of grounds or buildings." However, *Hubbard* was decided before Section 2744.01(B)(4) was amended, in 2003, to its current version.  The amended version specifically added the language "and is due to physical defects within or on the grounds . . . ," thus invalidating the analysis in *Hubbard*.[1]

The question, therefore, is whether there was a physical defect at the school.  Plaintiffs make no allegation in their Complaint, nor do they advance an argument in their brief (Doc. No. 34, pp. 17-19) of a physical defect.  The shelves functioned as intended -- they were adequate to hold supplies -- they did not collapse or tip over.  Plaintiffs' claim can only be that some unknown substance -- one not obvious to anyone who observed the shelves -- became toxic when combined with the torch flame.

---

[1] Though some authority holds that Section 2744.02, as amended in 2003, violates the Ohio Constitution, *see, e.g., Kammeyer v. City of Sharonville*, 311 F. Supp. 2d 653 (S.D. Ohio 2003), the bulk of recent cases have upheld it, *see, e.g., Cabaniss ex rel. Estate of Cabaniss v. City of Riverside*, 497 F. Supp. 2d 862, 899-900 (S.D. Ohio 2006).  Three Justices of the Ohio Supreme Court questioned the constitutionality of the statute in dicta, *see Butler v. Jordan*, 92 Ohio St. 3d 354 (2001), but recently that Court has not hesitated to apply Section 2774.02 as written. *See Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St. 3d 455, 460 (2009) (applying the "physical defect" requirement of the Section 2744.02 exception). Further, Revised Code Section 2744.03 lists the defenses available to the political subdivision if it is found that a Section 2744.02 (B) exception does apply. *Greene County. Agric. Soc. v. Liming.*, 89 Ohio St. 3d 551, 556-57 (2000). However, this analysis is unnecessary because an exception does not apply here.

The facts here are substantially similar to those in *Howell v. Canton*, 2008 WL 4712603 (Ohio App. 2008). In *Howell*, the plaintiff claimed her lungs had been permanently damaged from "exposure to chemicals involved in refinishing the floor" of a community center. The court in *Howell* found the physical defect exception did not apply because "the refinishing of the flooring was a process, and did not equate to the creation of a physical defect." *Id.* at 5. Like *Howell*, there is no evidence discernable to sight, smell, or touch that a dangerous substance was present on the shelving here. Like *Howell*, the chemical process wrought by the combination of the torch and the shelving is a process, not an independent physical defect. Plaintiffs' claims are therefore barred by immunity.

**Causation**

Even were there no immunity, the Court would still grant Defendant's Motion because Plaintiffs cannot show the causation element of negligence. To establish negligence, Plaintiffs must prove the existence of a duty, a breach of that duty, and the injury must be proximately caused by the breach. *Menifee v Ohio Welding Prod., Inc.*, 15 Ohio St. 3d 75 (1984).

To prove causation in this case, Plaintiffs must prove (1) they were exposed to a toxic substance, (2) the substance is capable of causing the injury, and (3) the toxic substance did in fact cause the injury. *Valentine v. PPG Indus., Inc.*, 158 Ohio App. 3d 615, (Ohio App. 2004).

Plaintiffs fail the first prong of the *Valentine* test. There is no evidence on the record that there was actually any substance on the shelves to cause Plaintiffs' injuries. The patch of dampness or moisture is insufficient to equate to toxicity. The moisture was unknown and never tested. Plaintiff Speiker recalls coughing and smelling an odor during the torching, but neither was any different than the normal incidents of torching metal. Further, none of Plaintiffs' doctors were deposed, so there is no medical evidence in the record to support Plaintiffs' claim of toxic exposure.

5

**CONCLUSION**

For the foregoing reason, Defendant's Motion for Summary Judgment (Doc. No. 33) is granted.

IT IS SO ORDERED.

                                                                      s/ *Jack Zouhary*
                                                                 JACK ZOUHARY
                                                                 U. S. DISTRICT JUDGE

                                                                 July 2, 2010